**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HENRY FRANKLIN BUTLER LI,<br><br>                                Plaintiff,<br><br>   v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>                                Defendant. | Case No. 23-cv-01487-BAS-VET<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S CHALLENGE ON THE MERITS; AND**<br><br>**(2) AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S FINAL DECISION** |

     Plaintiff Henry Franklin Butler Li seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner"), which denied his application for disability benefits under Title XVI of the Social Security Act ("the Act"). This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     Plaintiff filed his challenge to the Commissioner's decision (Pl.'s Br., ECF No. 23), and the Commissioner filed a response (Def.'s Br., ECF No. 25). The Court finds this matter suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Plaintiff's challenge on the

merits and **AFFIRMS** the Commissioner's decision to deny Plaintiff's application for Supplemental Security Income.

## I.  BACKGROUND

### A.  Plaintiff's Condition

Plaintiff was incarcerated from 2012 to 2021 after being convicted of committing lewd or lascivious acts with a child under fourteen years of age. (Administrative Record ("AR") 20, 176, 304, ECF No. 11.) *See* Cal. Penal Code § 288. He worked as a physical trainer prior to his incarceration and obtained his associate degree while in prison. (AR 30, 45, 286.) Various medical personnel treated Plaintiff during his incarceration at Richard J. Donovan Correctional Facility, and the treatment records consistently describe his bipolar disorder as "mild." (AR 251, 261, 264, 267, 269.) Plaintiff reported his "medications were life-changing." (AR 271.) He experienced anxiety related to his pending release, but he denied having any panic attacks or paranoid ideations during his mental status examinations. (AR 258, 261, 262, 264; *see also* AR 269 ("I'm good . . . a little anxious . . . it might be more excitement than anxiety.").)

Plaintiff has been living with his parents since his release from prison. (AR 32, 185.) He does chores and yardwork around the house; exercises for forty-five minutes each day; goes grocery shopping; and attends church, bible study, and group treatment once a week. (AR 186–89; *see also* AR 214 (noting Plaintiff can go out alone from the house).)

Despite his daily activities, Plaintiff reports he began experiencing severe anxiety following his release. (AR 185.) Plaintiff claims the anxiety stems from a fear of being harmed by people who target individuals convicted of sex crimes with minors. (AR 190–91, 284.) As a result, Plaintiff states he "can't handle being in public around people [he does not] know." (AR 189.) Plaintiff claims he suffers from panic attacks when he is in public for two hours or more, subsequently forcing him to leave his location. (AR 33, 189.) He asserts that he usually takes a two-hour nap to recover from a panic attack, so he cannot "commit to a job that is more than 2 hours a day." (AR 34, 225–26.)

Upon his release, Plaintiff began telehealth treatments with a new psychiatrist, Dr. Sinno, in September 2021. (AR 284–87.) Dr. Sinno notes that Plaintiff "complains of low energy, anxiety, and sleep disturbance," but that he is "stable" and "coping well except for his social anxiety in public." (AR 295–96, 298.) In January 2022, Dr. Sinno completed a medical source statement that opines Plaintiff has "marked limitations" in his ability to interact appropriately with supervisors, coworkers, and the public. (AR 307–09.)

### B.      Procedural History

In September 2021, Plaintiff filed an application for Supplemental Security Income benefits under Title XVI of the Act, claiming disability due to bipolar and anxiety disorders. (AR 148–55.) The Social Security Administration denied Plaintiff's claim on initial administrative review on October 25, 2021, and on reconsideration on December 14, 2021. (AR 68, 76.) Two state agency physicians, Dr. Nizmani and Dr. Reddy, reviewed Plaintiff's case. (AR 45–53, 61–66.) Both reviewing physicians found that Plaintiff does not suffer from a severe impairment. (AR 48, 61.)

On December 23, 2021, Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (AR 86.) The ALJ heard the case on November 22, 2022. (AR 17, 23.) At the hearing, the ALJ asked the vocational expert if there were any jobs for a hypothetical individual of Plaintiff's age, education, work experience, and with the residual functional capacity to understand and carry out simple instructions in a non-collaborative environment while responding appropriately to supervision and routine work setting situations. (AR 36.) The expert stated that there would be available work. (*Id.*)

The ALJ issued a written decision on December 29, 2022, which concludes that Plaintiff is not disabled within the meaning of the Act. (AR 17–23.) On February 16, 2023, Plaintiff appealed the ALJ's decision. (AR 146–47.) On July 5, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1–3.) *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), an applicant for social security disability benefits may seek judicial review of the Commissioner's final decision in federal district court. However, "[a]s with other agency decisions, federal court review of social security determinations is limited," because the court will uphold the Commissioner's decision "unless it contains legal error or is not supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla, but may be less than a preponderance." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Molina v. Astrue*, 647 F.3d 1104, 1110–11 (9th Cir. 2012)).

The ALJ must set forth the reasoning behind the decision "in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). When reviewing whether the Commissioner's decision is supported by substantial evidence, the court must consider the entirety of the record, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2006) (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). Nevertheless, "'where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld," since the court may not substitute its judgment for that of the ALJ. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

## III. ADMINISTRATIVE DECISION

### A. Standard for Determining Disability

"To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing 20 C.F.R. § 404.1520). "At steps one through four, the claimant retains the burden of proof; at step

five, the burden shifts to the Commissioner." *Maxwell v. Saul*, 971 F.3d 1128, 1130 n.2 (9th Cir. 2020); *see also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (holding this framework is "consistent with the general rule that [a]t all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits" (citation omitted)). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1520). The five-step sequential evaluation asks:

> (1) whether the claimant is presently engaging in substantially gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantially gainful activity.

*Parra*, 481 F.3d at 746 (citing 20 C.F.R. § 404.1520(a)(4)).

Additionally, at step four, the ALJ assesses the claimant's residual functional capacity ("RFC"), which considers the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). A claimant's RFC is the "most [he] can still do despite [his] limitations" considering all medically determinable impairments. *Id.* § 404.1545(a)(1)(2). The claimant's RFC is used to determine whether the claimant can perform his past work (step four) or adjust to other available work (step five) that exists in significant numbers in the national economy. *Id.* If the claimant can make an adjustment to other work, the ALJ will find him not disabled. *Id.* § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the ALJ will find him disabled. *Id.*

### B. The ALJ's Disability Determination

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since filing his application. (AR 19.) At step two, the ALJ found Plaintiff has several medically determinable impairments, but he does not have a severe impairment or combination of impairments. (*Id.*)

In reaching the second conclusion, the ALJ analyzed Plaintiff's allegations, the medical record from his time in prison, and Dr. Sinno's opinion from after Plaintiff's release. (AR 20–23.) The ALJ found the opinions from the reviewing physicians to be persuasive in light of the medical evidence—including the mental status examinations—and Plaintiff's "significant activities of daily living." (AR 22.) The ALJ found Dr. Sinno's contrasting medical opinion unpersuasive for several reasons, including that it lacks support from objective clinical findings and from Dr. Sinno's "own treatment records reporting rather benign mental status examinations and good control with medications." (AR 23.) Overall, because the ALJ determined Plaintiff does not have a severe impairment, the ALJ concluded he is not disabled under the Act and ended the sequential evaluation at step two. (*Id.*)

## IV.  ANALYSIS

Plaintiff challenges the ALJ's decision, claiming that the ALJ improperly rejected Dr. Sinno's medical opinion and erred in failing to find a severe impairment at step two of the disability evaluation. (Pl.'s Br. 8:15–20:21.) The Commissioner contends that the ALJ reasonably found Dr. Sinno's opinion is unpersuasive and Plaintiff does not have a severe mental impairment. (Def.'s Br. 2:16–7:14.)

### A.  Dr. Sinno's Opinion

#### 1.  Standard for Medical Opinions

For claims filed before March 27, 2017, decades of precedent required an ALJ to assess medical opinions "based on the extent of the doctor's relationship with the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1527. If a treating physician's opinion was contradicted by other evidence, the ALJ still had to provide "specific and legitimate" reasons for rejecting the opinion. *Woods*, 32 F.4th at 789.

The Social Security Administration issued revised regulations that apply to claims filed after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416).

The revised rules provide the ALJ will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of all medical opinions and prior administrative medical findings in the record. *Id.* § 404.1520c(b).

When determining the persuasiveness of a medical opinion, the ALJ considers the supportability and consistency of the opinion, the medical professional's specialization and relationship with the claimant, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(1)–(5). Because the most important factors are supportability and consistency, the ALJ must explain how he considered these factors when discounting a medical source. *Id.* § 404.1520c(b)(1); *see also Woods*, 32 F.4th at 792.

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

These revised rules displace the Ninth Circuit's "longstanding case law" establishing a hierarchy of medical opinions and "presumptive weight based on the extent of the doctor's relationship with the claimant." *Woods*, 32 F.4th at 787. "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*; *see also id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

2. **Evaluation of Dr. Sinno's Opinion**

Under the revised regulations, the ALJ's decision to discredit Dr. Sinno's opinion is supported by substantial evidence. Initially, the ALJ noted Dr. Sinno "completed a form opining that the claimant had moderate and marked mental limitations in areas of

functioning." (AR 22.) After summarizing the opinion's conclusions, the ALJ evaluated its persuasiveness:

> The undersigned finds that Dr. Sinno's medical opinion is unpersuasive. First, his opinion is unsupported by any provided objective clinical findings and his own treatment records reporting rather benign mental status examinations and good control with medications (Exhibits 1F-3F). Second, his opinion is inconsistent with the prior administrative medical findings of mental non-severity (Exhibits 1A-3A). Lastly, the opinion is inconsistent with the claimant's own reported activities of daily living.

(AR 22–23.)

Supportability. First, the record supports the ALJ's finding that Dr. Sinno's opinion is unpersuasive because it lacks support in the objective medical evidence and Dr. Sinno's treatment records. The ALJ cited to Plaintiff's treatment records from his incarceration, which consistently describe his bipolar disorder as "mild," contain largely benign mental status examinations, and note Plaintiff denied having paranoid ideations. (AR 251, 259, 261, 264–69.) In addition, the ALJ cited to the records for Plaintiff's treatment with Dr. Sinno. In October 2021, Dr. Sinno noted Buter "is stable on his meds and reports no side effects. His anxiety is manageable and he is clean and sober[,] will continue same meds." (AR 300; *see also* AR 295 ("[Patient] is stable on his meds and reports no side effects to them."); AR 294 ("[Plaintiff] reports no side effects to his meds and is in good spirits.")). Although there are records noting Plaintiff's reports of panic attacks and him suffering from increased anxiety (AR 284, 292), the ALJ rationally concluded these reports do not support the significant, marked limitations contained in Dr. Sinno's opinion. *See Ahearn v. Saul*, 988 F.3d 1111, 1115–16 (9th Cir. 2021) (explaining the "ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities"); *see also Burch*, 400 F.3d at 679 (holding that although a claimant may interpret the medical evidence differently, an ALJ's reasonable interpretation must be upheld).

Plaintiff argues the ALJ's reliance on "rather benign status examinations" in Dr. Sinno's records "lacks validity" because "Dr. Sinno never conducted any mental status

- 8 -

23cv1487

exams." (Pl.'s Br. 17:3–7.) This argument misses the mark. If Plaintiff is correct, that means Dr. Sinno opined Plaintiff has marked limitations in his work ability in January 2022 based on three telehealth appointments and without ever having performed a mental status examination. That outcome underscores—not undercuts—the ALJ's supportability evaluation.

A reasonable interpretation of the record is that the ALJ is referring to mental status notes from R. Baker, a social worker who was assigned to Plaintiff along with Dr. Sinno. (AR 289–90.) Baker's notations in the treatment file frequently appear on the same page as Dr. Sinno's limited notes, and they contain routine snapshots of Plaintiff's mental health, including his speech, thought process, and mood. (AR 287, 293–303.) For example, on September 16, 2021, Baker noted Plaintiff's "speech was of normal rate, tone, and volume. His thought process was logical and linear. Client's mood was anxious and his affect was congruent. . . . Insight and judgment appeared to be fair. Client denied current [auditory hallucinations, visual hallucinations, suicidal ideation, homicidal ideation, or paranoid ideation]." (AR 301.) The ALJ's characterization of these observations as "rather benign" is reasonable. Moreover, Dr. Sinno's restrictive opinion is not adequately supported by the objective medical evidence, regardless of whether one includes these observations as part of his "treatment records." Simply put, Plaintiff's arguments challenging the ALJ's supportability explanation are unpersuasive.

<u>Consistency</u>. Second, the record supports the ALJ's determination that Dr. Sinno's opinion is inconsistent with other evidence, including Plaintiff's daily activities. Dr. Sinno checked the "marked" limitation box for Plaintiff's ability to interact appropriately with the public, supervisors, and coworkers. (AR 308.) At the same time, however, Plaintiff reports he leaves the house to go to church on Sundays, bible study on Mondays, group treatment on Fridays, and grocery shopping every week. (AR 186, 189, 213.) Plaintiff was also asked, "When going out alone, can you go out alone?" (AR 188.) He answered yes. (*Id.*) Substantial evidence supports the ALJ's reasoning that these activities are inconsistent with serious limitations on one's ability to interact with the public or

coworkers. *See Smith*, 14 F.4th at 1111 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

Further, the ALJ reasoned Dr. Sinno's opinion "is inconsistent with the prior administrative medical findings of mental non-severity." (AR 23.) Plaintiff contends this explanation does not withstand scrutiny because the doctors who reviewed his claim did not have his post-release records from his treatment with Dr. Sinno. (Pl.'s Br. 17:25–18:2.) Plaintiff began seeing Dr. Sinno about a month (AR 290, 302) before the first reviewing physician analyzed his claim (AR 44). So, Plaintiff is correct that the reviewing physicians did not have access to the treatment notes from the several telehealth sessions Plaintiff had between that time and when Dr. Sinno rendered his opinion several months later. (AR 290, 310.) Arguably, then, one could still reconcile the reviewing physicians' and Dr. Sinno's opinions. *But see Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023) (noting the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation" (citation omitted)).

That said, even if the Court gives this argument the benefit of the doubt, it makes no difference. As detailed above, there is substantial evidence to support the ALJ's rejection of Dr. Sinno's opinion because it lacks support in the objective medical evidence and is inconsistent with Plaintiff's significant daily activities. Hence, the ALJ appropriately discounted Dr. Sinno's opinion. *See Woods*, 32 F.4th at 787 (holding under the revised regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence"); *cf. Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (reasoning where substantial evidence supports the ALJ's conclusion, an error that "does not negate the validity of the ALJ's ultimate conclusion" is harmless).

### B. Finding of No Severe Impairment

Plaintiff also argues the ALJ erred in determining Plaintiff lacks a severe mental impairment. (Pl.'s Br. 15:11–20:21.) At step two, the claimant has the burden to establish a medically determinable impairment "or a combination of impairments that is severe and

meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii); *see also Maxwell*, 971 F.3d at 1130 n.2. The regulations require that an impairment "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. An impairment cannot be established by the claimant's "statement of symptoms, a diagnosis, or a medical opinion." *Id.* In addition, for an impairment to be severe, it must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(a).

Denials at step two are subject to a stringent standard. A claimant "need only make a de minimis showing for the analysis to proceed past this step." *Glanden v. Kijakazi*, 86 F.4th 838, 843–44 (9th Cir. 2023). "[O]nce a claimant presents evidence of a severe impairment, an ALJ may find an impairment or combination of impairments 'not severe' at step two '*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Id.* at 844 (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)). In other words, the court must determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687.

Substantial evidence supports the ALJ's step-two determination here. At the threshold, Plaintiff's step-two argument is rooted in his challenge to the ALJ's rejection of Dr. Sinno's opinion. (*See* Pl.'s Br. 9:15–25.) Because the ALJ appropriately discounted Dr. Sinno's opinion, the ALJ was not required to rely upon it to conclude Plaintiff met his burden of establishing a severe impairment.

The issue, then, is whether Plaintiff presented other evidence sufficient to demonstrate he has a severe impairment. He did not. No other medical opinion in the record concluded Plaintiff has a severe impairment. (AR 48, 61.)

Plaintiff relies on his statements, as well as treatment records capturing his self-reports, to argue he met his burden (Pl.'s Br. 6:23–7:7; 12:7–17, 13:18), but the ALJ was not required to accept those allegations. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir.

2022) ("[A]n ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." (citation omitted)). Rather, the ALJ found Plaintiff's subjective symptom testimony to be not credible. (AR 21.) The ALJ explained this testimony lacks credibility because, among other things, Plaintiff's "activities of daily living contradict his allegations." (*Id.*) The ALJ further explained:

> Plaintiff obtained an AA degree while incarcerated and planned to obtain a BA degree (Exhibit 2F/5), which demonstrates his significant mental functioning. Further, the claimant exercises 5–6 times per week for 120 minutes at a time, which demonstrates his significant ability to function. He also reported the ability to go out alone, drive, attend church, bible study, and group treatment on a weekly basis, further contradicting his allegations of debilitating anxiety and panic attacks (Exhibit 3E).

(*Id.*)[1] The ALJ "was not unreasonable" in determining that Plaintiff's activities—particularly him going out alone several times a week for church, bible study, and group treatment—are at odds with his subjective complaints of disabling panic attacks that usually necessitate a two-hour nap for recovery. *See Smartt*, 53 F.4th at 499. (*See also* AR 185–191 (identifying Plaintiff performs these daily activities, as well as weekly grocery shopping).) Consequently, the ALJ "made a reasonable determination based on specific, clear, and convincing evidence" that Plaintiff's daily activities are "inconsistent with the alleged severity of [his] limitations." *Id.*

Further, as discussed above, there are mental status examinations in the record that note Plaintiff's mood was anxious, but substantial evidence supports the ALJ's conclusion that these examinations do not demonstrate a serious limitation in Plaintiff's "ability to do basic work activities." *See* 20 C.F.R. § 404.1520(a). (*See also* AR 21–22 (reviewing the medical evidence and applying the four "paragraph B" criteria for mental impairments to determine severity).)

---

[1] The record indicates Plaintiff exercised 5–6 times a week for 120 minutes while in custody (AR 252); he states he exercises for forty-five minutes each day since his release (AR 186).

Overall, given the medical record, the appropriate discounting of Dr. Sinno's opinion, and the convincing explanation for finding Plaintiff's allegations are not credible, "the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *See Webb*, 433 F.3d at 687. Hence, the Court concludes the ALJ did not err in determining Plaintiff lacks a severe impairment at step two.

## V. CONCLUSION

In light of the foregoing, the Court finds the ALJ did not err in determining Dr. Sinno's opinion is unpersuasive. Nor did the ALJ err in finding Plaintiff does not establish he suffers from a severe impairment. Therefore, the Court **AFFIRMS** the Commissioner's decision to deny Plaintiff's application for Supplemental Security Income under Title XVI of the Act. It is hereby **ORDERED** that judgment be entered affirming the decision of the Commissioner.

**IT IS SO ORDERED.**

**DATED: August 22, 2024**

Hon. Cynthia Bashant
United States District Judge